UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| LARRY E. T.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:22-cv-00083-TWP-KMB |
| | ) |
| KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration, | ) ) ) |
| | ) |
| Defendant. | ) |

### ENTRY ON JUDICIAL REVIEW

Plaintiff Larry E. T. ("Plaintiff") requests judicial review of the final decision of the Acting Commissioner of the Social Security Administration (the "Commissioner"), denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") (Filing No. 1). For the following reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** the decision for further proceedings.

### I.     BACKGROUND

**A.     Procedural History**

On July 29, 2020, Plaintiff filed an application for DIB, alleging a disability onset date of June 19, 2020, due to degenerative disc disease, high cholesterol, benign prostatic hyperplasia, hypertension, lung nodule and bulging disc- back (Filing No. 10-2 at 16). His claim was initially denied on January 6, 2021, and again upon reconsideration on May 25, 2021. *Id*. Thereafter, Plaintiff filed a written request for hearing dated June 10, 2021 (20 CFR 404.929 *et seq*). *Id*.  On

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

November 4, 2021, a telephonic hearing was held before Administrative Law Judge D. Lyndell Pickett (the "ALJ") due to the extraordinary circumstance presented by the Coronavirus Disease 2019 Pandemic. *Id*. Plaintiff was represented by attorney Thomas C. Newlin, II. *Id*. Sheila G. Justice, a vocational expert, also appeared at the hearing. *Id*. On November 29, 2021, the ALJ denied Plaintiff's application for DIB (Filing No. 1 at 2). Following this decision, Plaintiff timely requested review by the Appeals Council. *Id*. On April 29, 2022, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. *Id*. On July 1, 2022, Plaintiff filed this action for judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g). *Id*.

**B.      Factual Background**

This factual background is not intended to be a comprehensive recitation of the medical history or the daily activities of Plaintiff, rather it refers to those facts that are relevant to this decision. At the time of his June 2020, alleged disability onset date, Plaintiff was fifty-one years old, and he was fifty-two years old at the time of the ALJ's decision (Filing No. 10-2 at 24). Plaintiff is now fifty-four years old. Plaintiff has at least a high school education and employment history of working as a caregiver, assistant press operator and press operator. *Id*. Plaintiff's alleged disability is due primarily to chronic back pain and shortness of breath caused by emphysema (Filing No. 10-7 at 55; Filing No.10-7 at 66).

In 2019 and March 2020, Plaintiff underwent physical examinations after complaining of chronic back pain (Filing No. 10-7 at 55; Filing No. 10-7 at 66). Although his physical examinations were "largely unremarkable, showing some tenderness and pain, but normal range of motion throughout," Plaintiff was later prescribed medication, pain management treatment,

physical therapy, and recommended steroid injections for his lumbar spine.[2] Imaging of Plaintiff's lower back taken in September and October 2019 showed mild degeneration, disc bulging, and some arthritis (Filing No. 10-7 at 75, Filing No. 10-15 at 32-33). Plaintiff attended numerous rounds of physical therapy, underwent numerous regimes of pain management treatments, and was prescribed a series of medications: Cymbalta, Norco, Oxycodone, Percocet, and Zanaflex to quell his pain (Filing No. 10-2 at 22-23; Filing No. 10-22 at 81-88). Plaintiff was later informed by a specialist that his back pain could not be corrected with surgery and Plaintiff was unable to receive the steroid injections because he did not have insurance[3] to cover the procedure (Filing No. 10-2 at 42; Filing No. 10-22 at 45-46).

In November 2020, Dr. Bart Goldman, M.D. ("Dr. Goldman"), conducted a physical consultative examination on Plaintiff whereby,

> he was able to get on and off the exam table without difficulty. He walked with a normal gait and without an assistive device.… The Plaintiff was able to heel to toe walk, heel walk and toe walk. His ability to squat was limited. He exhibited five out of five strength in his upper and lower extremities. The Plaintiff demonstrated limited range of motion in his lumbar and cervical spine. He had pain management in December of 2020.

(Filing No. 10-2 at 22; Filing No. 10-7 at 196-203) (citations omitted).

Dr. Goldman however noted that, "nothing on examination at this time . . . would prevent [Plaintiff] from ambulating 2 hours out of an 8 hour day, carrying less than 10 pounds frequently and/or carrying more than 10 pounds on an occasional basis." (Filing No. 10-7 at 198.) In January and April 2021, two independent medical experts assessed Plaintiff's functional abilities based on the medical record and found Plaintiff capable of performing work at the light exertional levels,

---

[2] See Filing No. 10-7 at 55-56; Filing No. 10-7 at 66-67; Filing No. 10-7 at 123-24; Filing No. 10-7 at 148-49; Filing No. 10-7 at 169-70; Filing No.10-22 at 45-46.

[3] The Commissioner claims " [i]t is unclear from the record if Plaintiff did lose insurance." (Filing No.15 at fn. 2.)

with additional postural and environmental restrictions to accommodate his severe impairments (Filing No. 10-3 at 10-13; Filing No. 10-3 at 21-24).

At the hearing before the ALJ, Plaintiff testified that the main thing preventing him from work was his back pain (Filing No. 10-2 at 35). He expressed swelling in his knees and feet as well, and that he could only stand for 15 minutes at a time. *Id*. He reported sitting in a recliner for most of his day and using a cane or motorized cart if he went shopping. *Id*. at 36-37. Plaintiff expressed difficulty bending over, twisting, or picking up anything heavy, and estimates that he could lift about ten pounds comfortably (Filing No. 10-2 at 37; Filing No. 10-2 at 40). Plaintiff continues to take painkillers and often has two inhalers with him throughout the day, due to his inability to walk far without becoming short of breath. *Id*. at 38-39.

## II.   DISABILITY AND STANDARD OF REVIEW

Under the Act, a Plaintiff may be entitled to DIB only after he establishes that he is disabled.  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To be found disabled, a Plaintiff must demonstrate that his physical or mental limitations prevent him from doing not only his previous work but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience.  42 U.S.C. § 423(d)(2)(A).

The Commissioner employs a five-step sequential analysis to determine whether a Plaintiff is disabled.  At step one, if the Plaintiff is engaged in substantial gainful activity, he is not disabled despite his medical condition and other factors.  20 C.F.R. § 416.920(a)(4)(i).  At step two, if the Plaintiff does not have a "severe" impairment that meets the durational requirement, he is not

disabled. 20 C.F.R. § 416.920(a)(4)(ii). A severe impairment is one that "significantly limits [a Plaintiff's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the Plaintiff's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve-month duration requirement; if so, the Plaintiff is deemed disabled. 20 C.F.R. § 416.920(a)(4)(iii).

If the Plaintiff's impairments do not meet or medically equal one of the impairments on the Listing of Impairments, then his residual functional capacity will be assessed and used for the fourth and fifth steps. Residual functional capacity ("RFC") is the "maximum that a Plaintiff can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); SSR 96-8p). At step four, if the Plaintiff can perform his past relevant work, he is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). At the fifth and final step, it must be determined whether the Plaintiff can perform any other work in the relevant economy, given his RFC and considering his age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). The Plaintiff is not disabled if he can perform any other work in the relevant economy.

The combined effect of all the impairments of the Plaintiff shall be considered throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The burden of proof is on the Plaintiff for the first four steps; it then shifts to the Commissioner for the fifth step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

Section 405(g) of the Act gives the court "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). In

reviewing the ALJ's decision, this Court must uphold the ALJ's findings of fact if the findings are supported by substantial evidence and no error of law occurred. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Further, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). While the Court reviews the ALJ's decision deferentially, the Court cannot uphold an ALJ's decision if the decision "fails to mention highly pertinent evidence, . . . or that because of contradictions or missing premises fails to build a logical bridge between the facts of the case and the outcome." *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010) (citations omitted).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ is required to articulate only a minimal, but legitimate, justification for her acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).

### III.   THE ALJ'S DECISION

The ALJ first determined that Plaintiff met the insured status requirement under the Act through December 31, 2023 (Filing No. 10-2 at 16-25). The ALJ then began the five-step sequential evaluation process. *Id*. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 19, 2020, the alleged onset date of Plaintiff's disability. *Id*. at 18. At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease, emphysema and obesity. *Id*. at 18-19. The ALJ also found that Plaintiff had other non-severe impairments: coronary artery disease, hypertension, obesity and osteoarthritis of the

bilateral knees. *Id*. At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. at 19-20.

In determining Plaintiff's RFC, the ALJ explained,

> [He] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the Plaintiff should not engage in climbing ladders, roles or scaffolds. The Plaintiff is able to climb ramps and stairs occasionally. The Plaintiff is able to balance, stoop, kneel, crouch, and crawl occasionally. The Plaintiff should have no more than occasional exposure to extreme cold and heat as well as wetness and exposure to hazards, such as dangerous machinery and unprotected heights. The Plaintiff is able to stand and walk for 30 minutes at a time, then sit for five minutes and alternate on this basis throughout the day.

([Filing No. 10-2 at 20](#).)

In reaching this conclusion, the ALJ determined "the Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id*. at 21. The ALJ did not find the consultative examiner's opinions that "Plaintiff could ambulate two hours during an eight hour period and lift and carry no more than 10 pounds" persuasive because "it is not consistent with or supported by the overall evidence of record documenting limited imaging findings of the spine and lungs, as well as limited exam findings, with normal gait, station, extremity strength and only some limited range of motion." *Id*. at 24.

At step four, the ALJ determined that Plaintiff was unable to perform his past relevant work as a caregiver, assistant press operator and press operator because the demands of this past relevant work exceeded Plaintiff's RFC. *Id*. at 23-24. At step five, the ALJ determined that Plaintiff was not disabled because there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, considering his age, education, work experience, and RFC. *Id*. at 24-

25. These jobs included a mail clerk and laundry sorter. *Id*. Therefore, the ALJ denied Plaintiff's applications for DIB because he was found to be not disabled. *Id*.

## IV. DISCUSSION

The Court does not take issue with the ALJ's determination but rather his analysis, or lack thereof, behind his RFC determination. The ALJ's decision in this case includes a few troubling aspects, some of which require remand. As such, the Court will not go through the entire opinion or the entire, massive medical record, or address all of Plaintiff's arguments. In his request for judicial review, Plaintiff asserts that the ALJ's RFC determination is not supported by substantial evidence and that it lacks a logical bridge between the evidence and legal conclusions. Plaintiff asserts that the ALJ failed to properly explain (1) how the medical evidence was analyzed to determine Plaintiff's RFC, (2) why some medical opinions were more controlling than others, and (3) how the ALJ determined that Plaintiff has a light RFC despite Plaintiff's statements about his impairments. The Court addresses the parties' arguments in turn.

### A. The Plaintiff's Subjective Symptoms

Plaintiff contends the ALJ failed to adequately explain why his statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record (Filing No. 13 at 11-12). The Court agrees.

When evaluating a Plaintiff's subjective complaints, an ALJ first determines whether the Plaintiff has a medically determinable impairment capable of causing the alleged symptoms before evaluating the intensity and persistence of the Plaintiff's symptoms to determine the extent to which they limit the Plaintiff's ability to perform work-related activities. 20 C.F.R. § 404.1529(b)–(c). When evaluating the intensity and persistence of a Plaintiff's alleged symptoms, the ALJ considers the totality of the evidence, including (1) the Plaintiff's daily activities; (2) the location, duration, frequency, and intensity of the Plaintiff's pain or other symptoms; (3) precipitating and

aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the Plaintiff takes; (5) treatment, other than medication, the Plaintiff receives; (6) any measures used to relieve pain or other symptoms; and (7) other factors regarding the Plaintiff's functional limitations and restrictions due to pain or other symptoms.  20 C.F.R. § 404.1529(c)(3).

An ALJ must justify his or her subjective symptom evaluation with "specific reasons supported by the record," *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013), and build an "accurate and logical bridge between the evidence and conclusion." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).  The court's review of an ALJ's credibility determination is generally deferential unless "if, after examining the ALJ's reasons for discrediting testimony, we conclude that the finding is patently wrong." *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010).  An ALJ's determination may be patently wrong where he or she fails to "'build an accurate and logical bridge between the evidence and the result.'" *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006) (quoting *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000)). Simply put, an ALJ "must competently explain an adverse-credibility finding with specific reasons 'supported by the record.'" *Engstrand v. Colvin*, 788 F.3d 655, 660 (7th Cir. 2015) (quoting Minnick v. Colvin, 775 F.3d 929, 937 (7th Cir. 2015)).

Here, the ALJ begins by discussing Plaintiff's allegations employing a paragraph of boilerplate language. The ALJ stated that "the Plaintiff's statement concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Filing No. 10-2 at 21.)  This appears to be a version of the boilerplate language that has concerned reviewing courts for a number of years, with previous versions often coming under fire. *See, e.g., Stark v. Colvin*, 813 F.3d 684, 688 (7th Cir. 2016) (deriding "the ALJ's use of language that this court

9

routinely has condemned as 'meaningless boilerplate' and 'backwards' analysis."); *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012) ("The present 'template,' ... is even worse ...."); *Martinez v. Astrue*, 630 F.3d 693, 696 (7th Cir. 2011) ("There is no explanation of which of [Plaintiff's] statements are not entirely credible or how credible or noncredible any of them are."); *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) ("It is not only boilerplate; it is meaningless boilerplate.").

The problem with this boilerplate is that it does not match what the Commissioner's regulations say the standard for evaluating allegations about symptoms is: that the ALJ must determine whether those allegations "can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 416.929(a). The standard that the ALJ said she was applying here—that the allegations must be entirely "consistent" with the evidence—is more rigorous.

      1.    **<u>Conservative Treatment</u>**

The ALJ failed to fulfill his obligation to explain and adequately support his subjective symptom evaluation. Thus, remand is required to correct this error.

In this case, after reciting Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms, the ALJ then recited Plaintiff's medical and treatment history, before concluding that it was inconsistent with the objective medical evidence "based on the limited imaging findings and fairly conservative treatment, without inpatient treatment or surgical treatment." (Filing No. 10-2 at 22.) Many courts have encountered an ALJ who discounts a Plaintiff's statements because he had not received the type of treatment one would expect. *See Lopez v. Berryhill*, 340 F. Supp. 3d 696, 702 (N.D. Ill. 2018) ("This is a fairly common reason ALJs advance for disbelieving a Plaintiff but, almost invariably, they do not explain what type of treatment they expect a disabled individual to have."); *Voigt v. Colvin*, 781 F.3d 871, 877 (7th Cir.

2015) (ALJ discounted back pain because Plaintiff did not undergo expected treatment for someone with disabling pain, but never explained what additional treatment would be expected or why that treatment would be medically appropriate). Here, too, the ALJ never explained what treatment he would have expected Plaintiff to undergo or, more importantly, why it would have been medically appropriate to undergo that treatment.

Although Plaintiff provided various reasons throughout the record, including at the hearing, for why he did not seek certain treatment, such as being without medical insurance or being advised that surgery was not possible to address his back pain, the ALJ did not discuss consideration these reasons (Filing No. 10-2 at 21; Filing No. 10-22 at 45-46). This too was error. *See Beardsley v. Colvin*, 758 F.3d 834, 840 (7th Cir. 2014); *Patrick S. v. Kijakazi*, 2022 WL 4591458, at *6 (S.D. Ind. Sept. 30, 2022) (remand required because ALJ not permitted to draw negative inference regarding lack of treatment without first considering explanation). The ALJ here did not consider Plaintiff's reasons for not seeking additional treatment and how those proffered reasons impacted his determination. The ALJ's decision to discount Plaintiff's subjective symptoms based on allegedly conservative treatment is thus not supported by substantial evidence.

Although the Plaintiff has undergone numerous regimes of pain management treatment and physical therapy and was prescribed a series of narcotic painkillers: Norco, Oxycodone, and Percocet to quell his pain, (Filing No. 10-2 at 22-23), the ALJ fails to let this Court know what the ALJ thought about them and how they played into the ALJ rejecting Plaintiff's allegations. *See Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016) (ALJ must "engage sufficiently with the evidence" to allow the reviewing court to follow his reasoning); *McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011). Several courts have concluded that a treatment plan consisting of narcotic medication is not necessarily conservative. *David A. v. Berryhill*, 2019 WL 5381884, at *6 (N.D.

11

Ill. Oct. 21, 2019) (collecting cases); *see also Michael C. v. Saul*, 408 F. Supp. 3d 919, 925 (N.D. Ill. 2019) (treatment with injections and narcotics should bolster, not detract, from the credibility of pain allegations). Also, as the Seventh Circuit has pointed out repeatedly, Plaintiff's kind of quest to alleviate pain makes it more likely that a Plaintiff's allegations are credible. *Israel v. Colvin*, 840 F.3d 432, 441 (7th Cir. 2016); *Scrogham v. Colvin*, 765 F.3d 685, 701 (7th Cir. 2014).

The Commissioner relies on Plaintiff's report in 2020 that he was "doing better" and that the medications were "helping pain" when asserting that the ALJ's credibility determination was proper (Filing No. 15 at 10). *See Green v. Saul*, 781 F. App'x 522, 527 (7th Cir. 2019) (an "ALJ is permitted to consider the effectiveness of treatment . . . in making his credibility determination."). While the ALJ may rely on Plaintiff's prior statements regarding his treatment, nowhere does the ALJ address how such comments stack up against the Plaintiff's continued use of pain medications, physical therapy, and pain management treatment. Although the Court will defer to an ALJ's subjective symptom finding that is not patently wrong, the ALJ must adequately explain his subjective symptom evaluation "by discussing specific reasons supported by the record." *Pepper*, 712 F.3d at 367.

The ALJ's analysis of Plaintiff's subjective symptoms lacked the requisite "logical bridge" between subjective symptom evidence and the ALJ's conclusions concerning that evidence, such that ALJ's analysis and resulting determination as to Plaintiff's RFC were not supported by substantial evidence. As such, this case must be remanded to the Commissioner for another go-round, but it is worthwhile to address Plaintiff's concerns about the way the ALJ handled the opinion of the consultative examiner.

B. **Consultative Examiner**

Here, the ALJ gave little weight to the consultative examiner's, Dr. Goldman, opinions, instead adopting the functional limitations of the independent medical experts (Filing No. 10-2 at 23). Plaintiff contends that the ALJ improperly discounted the opinions of Dr. Goldman (Filing No. 13 at 13-16). The Court agrees.

An ALJ "is required to consider a consultative examiner's opinion and explain the weight given to such an opinion in his decision." *Lucio v. Barnhart*, 2004 WL 1433637 at *12 (N.D. Ill. June 22, 2004) (citation omitted). However, "[a]n ALJ may discount the opinion of a consultative examiner ... as long as he provides good reasons for doing so." *Johnny T. v. Saul*, 2020 WL 108442, at *5 (N.D. Ill. Jan. 9, 2020) (citation omitted). Further, "[a]n ALJ can give less weight to a [consultative] doctor's opinion if it is internally inconsistent or inconsistent with the other substantial evidence in the record as long as she articulates her reasons for giving the opinion less weight." *Hall v. Astrue*, 489 F. App'x 956, 958 (7th Cir. 2012) (citations omitted).

Again, after reciting Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms, the ALJ then recited Plaintiffs' medical and treatment history, before stating,

> The undersigned has fully considered the medical opinions and prior administrative medical findings as follows: the undersigned does not find the medical opinion completed by the consultative examiner persuasive. The consultative examiner found the Plaintiff could ambulate two hours during an eight hour period and lift and carry no more than 10 pounds. The undersigned does not find this persuasive, as it is not consistent with or supported by the overall evidence of record documenting limited imaging findings of the spine and lungs, as well as limited exam findings, with normal gait, station, extremity strength and only some limited range of motion. The undersigned finds the prior administrative findings somewhat persuasive, as they are fairly consistent with and supported by the treating notes that document continues issues with pain but limited exam findings and mild imaging findings discussed above.

(Filing No. 10-2 at 23.) (citations omitted).

13

The ALJ then notes,

> After careful consideration of the entire record, the undersigned finds that the Plaintiff has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the Plaintiff should not engage in climbing ladders, ropes or scaffolds. The Plaintiff is able to climb ramps and stairs occasionally. The Plaintiff is able to balance, stoop, kneel, crouch and crawl occasionally. The Plaintiff should have no more than occasional exposure to extreme cold and heat as well as wetness and exposure to fumes, odors, dusts, gases and poor ventilation. The Plaintiff should have no exposure to hazards, such as dangerous machinery and unprotected heights. The Plaintiff is able to stand and walk for 30 minutes at a time, then sit for five minutes and alternate on this basis throughout the day.

([Filing No. 10-2 at 20](#).)

The ALJ did not offer any specific reasons for discounting the consultative examiner's opinions beyond finding it unpersuasive ([Filing No. 10-2 at 23](#)). The ALJ leaves the Court to assume its rationale. But without adequate explanation, it is not apparent how the ALJ arrived at his conclusion.

After reviewing the parties' arguments, the ALJ's written decision, and the medical and other evidence in the record, the Court concludes the ALJ's RFC determination must be reassessed on remand. The ALJ did not sufficiently explain the rationale for discounting Plaintiff's statements regarding his symptoms and treatments and discounting the consultative examiner's conclusions, leaving an evidentiary deficit or gap to fill with his own lay opinion. The ALJ's analysis does not create a logical bridge to his conclusion. *See Fisher v. Berryhill*, 760 F. App'x 471, 476 (7th Cir. 2019) (citing *Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018) (an ALJ's decision is not supported by substantial evidence when it "either fails to build a logical and accurate bridge between the evidence and conclusion or fails to follow the agency's own regulations in a way that likely bears on the outcome.") On remand, the ALJ must take care to fully explain his conclusions and point to substantial evidence of record that supports those conclusions.

## V. CONCLUSION

For the reasons set forth above, the final decision of the Commissioner is **REVERSED and REMANDED**. The Court summarizes what is required on remand. The ALJ's decision to discount Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms in conducting the RFC assessment should be reviewed; as well as the ALJ's decision to discount the consultative examiner's opinions.

**SO ORDERED.**

Date: 9/22/2023

_____
Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Adriana Maria de la Torre
THE DE LA TORRE LAW OFFICE LLC
adriana@dltlawoffice.com

Elaine Kuntz
SOCIAL SECURITY ADMINISTRATION
Office of Program Litigation – 6
Elaine.kuntz@ssa.gov

Julian Clifford Wierenga
UNITED STATES ATTORNEY'S OFFICE
julian.wierenga@usdoj.gov

Lu Han
SOCIAL SECURITY ADMINISTRATION
Lu.han@ssa.gov